STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 12-936


STATE OF LOUISIANA

VERSUS

ROSHEED GUILLORY


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR125227.1
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and John E. Conery, Judges.


**CONVICTIONS AFFIRMED. SENTENCE FOR AGGRAVATED RAPE AFFIRMED. SENTENCES FOR AGGRAVATED BURGLARY AND FIRST DEGREE ROBBERY AMENDED. SENTENCES FOR AGGRAVATED BURGLARY AND FIRST DEGREE ROBBERY AFFIRMED AS AMENDED. SENTENCE FOR UNAUTHORIZED USE OF A MOTOR VEHICLE VACATED AND REMANDED FOR RESENTENCING.**


**Michael Harson**
**District Attorney**

**Roger P. Hamilton, Jr.**
**Assistant Disttrict Attorney**
**15th Judicial District Court**
**Post Office Box 3306**
**Lafayette, Louisiana 70502-3306**
**(337) 232-5170**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Rosheed Guillory**

**CONERY, Judge**

In this criminal case, Rosheed Guillory (Defendant) appeals his conviction for aggravated rape, first degree robbery and aggravated burglary on the basis that the evidence introduced at trial was insufficient to support the elements of the offenses beyond a reasonable doubt.[1] Defendant alleges that in sentencing Defendant, the trial court failed to clarify whether the five-year sentences imposed for the convictions of first degree robbery, aggravated burglary, and unauthorized use of a motor vehicle were to be served at hard labor and failed to impose the sentence for first degree robbery without the benefit of parole, probation, or suspension of sentence. Defendant also alleges the trial court erred in concluding that Defendant made a knowing and voluntary waiver of his right to trial by jury. For the following reasons, we affirm the convictions, amend the sentences imposed for aggravated burglary and first degree robbery, vacate the sentence for unauthorized use of a motor vehicle and remand for resentencing, and find Defendant knowingly and intelligently waived his right to a jury trial.

## PROCEDURAL HISTORY

Defendant, Rosheed Guillory, was indicted on July 8, 2009, on one count of aggravated rape, a violation of La.R.S. 14:42; one count of aggravated burglary, a violation of La.R.S. 14:60; one count of first degree robbery, a violation of La.R.S. 14:64.1; and one count of unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4.

On January 31, 2011, Defendant filed a Motion and Order to Waive Jury. Defendant averred, "It is the position of Defendant herein, that undersigned counsel is

---

[1] Defendant did not appeal his conviction for the unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4.

entitled to waive his trial by jury pursuant to Article 780 of paragraph B." The motion was granted ex parte on February 1, 2011. On April 4, 2011, Defendant filed a Motion and Order for Jury Trial, seeking to reinstate his right to a jury trial pursuant to La.Code Crim.P. art. 780(C). The trial court provisionally granted Defendant's motion on April 6, 2011, and reinstated his request for a jury trial, pending a hearing on any objection the State may file. No objection was forthcoming until November 30, 2011, when the State filed a Motion to Reconsider and Reverse the Order Granting Trial by Jury by Defendant, Rosheed Guillory, and Motion to Proceed with Bench Trial. On December 2, 2011, Defendant filed a Motion to Sever co-defendant Nelson Chambers from the trial. Chambers had previously chosen to waive his right to jury trial.

On December 5, 2011, the morning of trial, Defendant withdrew his April 4, 2011 Motion and Order for Jury Trial, which rendered moot the State's November 30, 2011 objection. Defendant also withdrew his Motion to Sever co-defendant Nelson Chambers. After a discussion with the trial court on the record, Defendant and his counsel confirmed Defendant's desire to be tried by the trial court in a bench trial, and the two men proceeded to trial. On December 8, 2011, Defendant was found guilty as charged. On February 16, 2012, Defendant was sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence for the conviction of aggravated rape, and five years imprisonment on each of the remaining counts, to be served concurrently with the life sentence.

Defendant has perfected a timely appeal wherein he raises three assignments of error: 1) insufficient evidence to sustain the verdicts of aggravated rape, aggravated burglary, and first degree robbery; 2) the three five-year sentences are unclear and indeterminate; and 3) the trial court erred when it determined that Defendant's waiver

2

of a jury trial was intelligently and knowingly made and that the waiver could not be rescinded.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. In this case, there are potential errors patent raised by the assignments of error, all of which are discussed below.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant asserts the State failed to prove the offenses of aggravated rape, aggravated burglary, and first degree robbery beyond a reasonable doubt. He does not refute that he took the victim's SUV from her house and is guilty of unauthorized use of a movable. He argues, however, that the physical evidence contradicts the victim's testimony regarding the burglary, robbery, and rape. While he does not say so directly, he relies on his co-defendant, Nelson Chambers, who testified that Defendant was not at the scene of the alleged rape and robbery.

With regard to sufficiency of the evidence, this court set forth the standard to be used in *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

The testimony of a single witness is sufficient to support a verdict absent internal contradiction or irreconcilable conflict with the physical evidence, and any credibility determination made by the trier of fact is normally not within the purview of the reviewing court. *State v. Watson*, 39,362 (La.App. 2 Cir. 4/20/05), 900 So.2d 325; *State v. Hotoph*, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, *writ denied,* 99-3477 (La. 6/30/00), 765 So.2d 1062 and *writ denied*, 00-150 (La. 6/30/00), 765 So.2d 1066.

The evidence submitted at trial included the testimony of the third co-defendant, Demetrius Coleman, as well as the photographs of the victim's injuries and the crime scene, all of which served to corroborate the testimony of the victim, N.U.[2]

Rape is defined as an "act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La.R.S. 14:41(A). Furthermore, emission is not necessary. La.R.S. 14:41(B). Aggravated rape is defined, in pertinent part, as rape under the following circumstances:

> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
>
> . . . .
>
> (5) When two or more offenders participated in the act.

La.R.S. 14:42(A).

---

[2] Pursuant to La.R.S. 46:1844(W), the initials of the victim are used to protect her identity.

First degree robbery is defined as "the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La. R.S. 14:64.1.

Aggravated burglary is defined as:

the unauthorized entering of any inhabited dwelling, or of any structure, water craft or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,

(1) Is armed with a dangerous weapon; or

(2) After entering arms himself with a dangerous weapon; or

(3) Commits a battery upon any person while in such place, or in entering or leaving such place.

La.R.S. 14:60.

In the early morning hours of May 16, 2009, Defendant, accompanied by Nelson Chambers and Demetrius Coleman, followed the victim, N.U., and her friend Jill Ashy from Marley's, a bar in downtown Lafayette, to the victim's home in a residential neighborhood in central Lafayette.

N.U. testified that she and Ms. Ashy left Marley's about 2:15 a.m. and began walking to Ms. Ashy's car, a white Lexus, parked next to the Greenwood Shoe Store, when some men in the parking lot across the street began yelling at them. They ignored the men and, with Ms. Ashy driving, left the parking lot. N.U. testified that shortly after leaving the downtown parking lot, they stopped in Don's parking lot and exchanged places because Ms. Ashy did not feel well enough to drive.

Upon arriving at N.U.'s house, they sat outside on the patio for a few minutes smoking cigarettes. At this point, Ms. Ashy felt sick and went inside to the bathroom. N.U. called a friend, Jared Stevens, to come over and play some video games. She

then went into the house to check on Ms. Ashy, who was still in the bathroom in the master bedroom. As she walked back through the kitchen to go back outside to wait for Jared Stevens, three men burst in through the kitchen door. N.U. stated she recognized the men as the men who yelled at her and Ms. Ashy as they were leaving Marley's.

N.U. testified one man, Nelson Chambers, punched her in the face, grabbed her by the hair, and bent her over the countertop. He banged her head against the countertop until she stopped struggling. While Chambers was holding what she was told was a gun[3] to her head, the men demanded money and threatened to kill her. Defendant put his hand in N.U.'s underwear and penetrated her vagina with his finger. N.U. identified both Defendant and Nelson Chambers in court and testified that after pulling off her panties, both men took turns raping her as the other held her down.

N.U. testified that the third man, later identified as Demetrius Coleman, appeared troubled by what was happening to her at the hands of Defendant and Chambers. He did not touch her and tended to stay out of her sight, although she made eye contact with him trying to draw his attention to the picture of her young son in the hope that he would intervene. She pleaded with her assailants not to kill her as she was the single parent of a five-year-old son.[4] The assailants suddenly stopped their attack on N.U., and all three men ran out of the kitchen door. N.U. ran to lock the door behind them when she heard a crash. Looking out through the kitchen window, she saw Defendant driving her SUV and attempting to back out from the carport to the street. Ms. Ashy's Lexus was blocking the way. Defendant

---

[3] Demetrius Coleman testified that Charles was holding a cell phone to N.U.'s head.
[4] At the time of the incident, N.U.'s son was spending the night with N.U.'s parents.

backed into the Lexus, pushing it aside, and in the process, damaged N.U.'s SUV as well as Ms. Ashy's Lexus.

N.U. then ran to the bathroom and yelled for Ms. Ashy to come out. She went back out into the living room and two of the men came back into the house. One of them, who she thought might have been Coleman, hit Ms. Ashy in the eye as she entered the living room. Coleman then grabbed a vase that was full of change, and the two men ran out of the house for a second time.

N.U. and Ms. Ashy looked for their cell phones to call for help but could not find them. N.U. testified that she thought the entire incident lasted about one half hour to forty-five minutes. They locked all the doors, crawled out of a back bedroom window and ran to a neighbor's house, but the neighbor was unresponsive to their knocking. Just then Jared Stevens, the friend N.U. had been expecting, arrived at N.U.'s residence. N.U. and Ms. Ashy used his cell phone to call the police and then drove around the block several times until the ambulance arrived. The two women were transported to Our Lady of Lourdes Hospital where a rape kit examination was performed on N.U.

N.U. testified that she was shown a photographic lineup the following Monday. She explained that although she thought she might have recognized the Defendant, she was not certain it was him and, upon the advice of the detective, did not make a positive identification at the time.

Ms. Ashy's testimony corroborated N.U.'s testimony up to the point that Ms. Ashy left the porch and went into the house. While she was in the bathroom, Ms. Ashy heard arguing coming from the kitchen and thought that N.U.'s boyfriend had come over and they were arguing. Ms. Ashy thought it might have been Chambers who gave her a black eye when she later came out of the bathroom. She explained that

she had left her cell phone outside on the patio table when she just went into the house. She never saw the phone again. On cross examination, she was shown her cell phone statement for May 15, 2009 to May 16, 2009, and asked about a certain number listed as an outgoing call placed several times between 3:30 and 4:16 a.m. on the morning of the incident, May 16th. She did not recognize the number.

Demetrius Coleman pled guilty to aggravated burglary via a plea agreement with the State and had not been sentenced at the time of trial. As a part of the plea agreement, Coleman agreed to testify truthfully at the trial. He testified that he, Chambers, and Defendant were out in downtown Lafayette when they saw the two women. He said they asked them the time, and the women answered. They then followed the women until they stopped in a bank parking lot, and as the women switched drivers, they had some words with them. Then the two women left. He stated they followed the women until the women pulled into a driveway. They parked their car a few houses away because they did not want the women to know they had followed them.

Coleman testified that Defendant got out of the car first and approached the house. After a few minutes, he and Chambers got out and hid behind a fence. Soon thereafter, Defendant found them. Defendant had in his possession a purse and a cell phone he said he got off the patio table. Coleman stated he then entered the Lexus parked in the driveway to look for money while Defendant and Chambers ran through the patio and into the house.

When Coleman entered the kitchen, he testified that Chambers was holding the head of one of the women down on the kitchen counter top and had a cell phone against her head demanding money. Defendant was sitting on the counter demanding that she suck his "private." Coleman stated that the woman pointed to a vase that had

8

money in it, and he grabbed the vase and ran back out to the car. He further stated that,after a short while, Chambers came out and got in the car. Defendant got in the SUV, later identified as N.U.'s vehicle, and crashed into Ms. Ashy's Lexus as he was backing out of N.U.'s driveway. He stated that Chambers received a few calls on his cell phone while they were driving back to Opelousas. When shown Ms. Ashy's cell phone record, he identified a certain number as being Chambers' phone number. Coleman testified that Defendant stole a cell phone and purse belonging to one of the women from the patio.

The victim's SUV was found a few days later in St. Landry Parish. The vehicle had switched license plates. The plate on N.U.'s SUV was registered to a Floyd Guidry, Defendant's stepfather. The license plate belonging to N.U.'s SUV was located on the carport roof of the Guidry residence where Defendant resided.

Co-defendant Nelson Chambers also testified, giving a completely different version of the events of the early morning hours of May 16, 2009. He stated that upon arriving in Lafayette, Defendant wanted to walk around by himself, so the three agreed to meet later in the evening. Chambers testified that he and Coleman walked around and met N.U. and Ms. Ashy during the evening. He testified that the four had a conversation and Chambers gave his phone number to N.U. Chambers contends that later, the two men reunited with Defendant and returned to his car.

Chambers said that he had a missed call from the victim at about 12:30 a.m. He said he called N.U. back, and she supposedly invited them to her house for drinks. When asked why he did not have cell phone records to show those calls, he explained that although he had a cell phone on his person, he had a prepaid cell phone that he left in the car and it was that number he had given to the victim. He said he could not get the records because he did not remember the number.

9

Chambers testified all three men met the two women at a bank parking lot and then followed them to the victim's house where he and Coleman were invited inside. He said Defendant had not been invited, so he told Defendant to drive around in the car while he and Coleman went into the house. According to Chambers, he and Coleman and the two women sat together in the living room talking, but eventually Ms. Ashy left the room and did not come back. Coleman then left the house. Chambers said he sat with N.U. for about a half hour until they heard a crash. When they ran outside, he saw Defendant drive away in the victim's car. When N.U. insisted on calling the police, Chambers decided he did not want to become involved. He said that Coleman went back into the house, grabbed the vase with money in it, and they hurriedly left the scene.

Chambers testified that within a few minutes after he left, he began to receive phone calls and knew they were from N.U., but did not answer. He further stated the cell phone that he had left in the car was dead. He admitted that the next day he had driven around in N.U.'s SUV with Defendant. He further admitted that he had lied to the police about his whereabouts, originally telling them he had not been in Lafayette at all that night.

In his original statement to Detective Glenn Landry, Chambers also stated he had never been with Defendant or Coleman in Lafayette on the night in question and he never referred to the victims by name, only calling them "the girls" rather than N.U. and Ms. Ashy. However at trial Chambers continually referred to them by name, claiming he knew their names from meeting them on the night in question.

On cross examination, Chambers contended that neither he nor Demetrius Coleman hit Ms. Ashy in the eye. He also testified that N.U. did not hit Ms. Ashy in the eye. When asked to identify Ms. Ashy's photograph showing her with a black

eye, Chambers claimed he had difficulty in identifying the picture of Ms. Ashy, because of her black eye, shown in the photograph in Exhibit 23.

In addition to the testimony given, the physical evidence presented at trial placed Defendant, Chambers, and Coleman at the victim's residence in the early morning of May 16, 2009. DNA evidence put Defendant and Chambers in the victim's vehicle. DNA also placed Coleman in Ms. Ashy's Lexus. Furthermore, Chamber's DNA was found on the waist band of the victim's panties. There was no spermatozoa or seminal fluid or any DNA evidence extracted from the rape kit examination. Nor were there any identifiable or comparable fingerprints of any of the three men lifted from the kitchen of the victim's house.

While Defendant does not refute that he stole the victim's car, he argues that there was no physical evidence presented to establish that he was in the house, or that Defendant had any knowledge of what occurred inside the house beyond a reasonable doubt. He argues that the convictions were based solely on the testimony of the victim and Coleman, which were so inconsistent with the evidence and each other's testimony as to render the trial court's credibility call irrational and, thus, violated his fundamental protection of due process of law. *See State v. Mussall*, 523 So.2d 1305 (La.1988). Accordingly, Defendant argues this court's reversal of the convictions is both "warranted and necessary."

In addition to the unauthorized use of the victim's SUV, which was not appealed, Defendant was convicted of aggravated rape, aggravated burglary, and first degree robbery.

In the victim's version of events, the three men entered her residence without her permission. Two of the men, Defendant and Chambers, committed a battery on her. Defendant used his finger to penetrate her and then both men took turns

11

repeatedly raping her while one held what she thought was a gun to her head. Both men hit her repeatedly, threatened to kill her, and then by force and intimidation, stole money from her immediate control, the vase she pointed out on top of the refrigerator, all while she was threatened with what she believed was a gun, a dangerous weapon. Defendant then stole and damaged N.U.'s vehicle and damaged Ms. Ashy's car as he drove away. All of the elements of all the crimes charged were established by N.U.'s testimony, which, if believed, was sufficient to support the convictions.

Defendant urges that the lead investigator on the case, Detective Landry, did not recall the kitchen being in disarray or the kitchen drawers open. However the photographs of the kitchen placed into evidence by the State clearly show both. N.U. panties were on the floor near the kitchen counter. Although N.U. was not able to identify Defendant in a photo lineup, she clearly gave a specific description of all three men during her in court testimony, including their clothing and physical appearance. N.U. also positively identified Defendant and Chambers at trial as her rapists and the men, who came into her home uninvited, beat her, threatened to kill her and robbed her. She also identified Defendant as the person who damaged and stole her car.

In this case, the trial court found all the elements of aggravated rape, aggravated burglary, and first degree robbery and, unauthorized use of a movable were proven beyond a reasonable doubt. Obviously the trial court found the victim's and Coleman's testimony when combined with all the physical evidence and circumstantial evidence more credible than Chamber's testimony.

Further, the trial court heard N.U and Ms. Ashy testify that, at her boyfriend's suggestion, N.U. called a friend, Jared Stevens, to come over and play video games with her. N.U. was waiting for Stevens when Defendant, Chambers, and Coleman

12

entered her kitchen uninvited and struck her.  It would not make sense that N.U. would invite strange young men to come over, and then invite, Jared Stevens, a friend of her boyfriend, to also come over. Defendant attempts to debunk the victim's version of events by stating the call to Stevens was made after the attack. Defendant's time line for the victim's call to Stevens was clearly refuted by the testimony of Detective Landry, who testified that he talked to Stevens and determined the call inviting him to come over to play video games was placed before the attack.

Finally, Defendant argues that N.U. could not pick Defendant out of a photographic lineup. The victim testified she did not positively identify him from the six photographs presented to her because she was uncertain based only on the photographs shown to her at the time, as there was no lineup.  She was advised that if she was not certain to not pick out anyone on the photo array.   Detective Landry testified that this was true. He stated that he normally advised persons "[t]hat if they're not sure, don't pick anyone out."   However, N.U. positively identified Defendant in court as one of the men who raped her, beat her, threatened to kill her, and stole her money and car.

Defendant points to several other alleged inconsistencies, like who was wearing which t-shirt or whether Defendant's hair was cut before the photograph was taken that was used in the photographic lineup. In *State v. Schexnaider*, 03-144, p. 9 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 456-57 (citations omitted), wherein the defendant asserted there was insufficient evidence that he forcibly raped a minor based on the inconsistencies in the minor victim's testimony, this court noted:

> The trial court considered the testimony of all witnesses in this case and made a credibility determination that should not be second guessed by this court. Furthermore, "[t]he fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient." *State v.*

*Holley*, 01-0254, p. 6 (La.App. 3 Cir. 10/3/01), 799 So.2d 578, 583, *citing State v. Tompkins*, 403 So.2d 644 (La.1981), *appeal after remand,* 429 So.2d 1385 (La.1982).

The following is well settled:

The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.

The pictures placed in evidence taken at the scene on the night in question show that the kitchen was in disarray and N.U.'s panties were on the kitchen floor next to the counter, further corroborating her testimony. Pictures of the victim show she had and bruises on her forehead, near her eye, and on her face and legs consistent with her testimony. In short, there was sufficient corroborating evidence to support N.U.'s testimony and that of Coleman, for the trial court to accept their testimony as credible, and find the Defendant guilty as charged. Defendant's first assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant asserts that the trial court erred when it imposed the sentences on the convictions for aggravated burglary, first degree robbery, and unauthorized use of a motor vehicle by failing to specify whether the sentences were to be served with or without hard labor, and as to first degree robbery, whether the sentence was to be served without benefit of parole, probation, or suspension of sentence.

At the sentencing hearing, the following conversation took place:

THE COURT: All right. Is he ready for sentencing?

All right. Have the record reflect that Mr. Rosheed Guillory is present in court with his attorney. Mr. Rosheed was convicted of aggravated rape by this Court. The facts surrounding this incident was [sic] as egregious as I've ever seen. Potentially, the victims were ambushed in this case for no apparent reason. And this Court is just

14

simply disturbed at the activities of these defendants in the commission of the offense. Having said that, it is the sentence of this Court that the defendant shall be sentenced to imprisonment at hard labor for life without benefit of probation, parole or suspension of sentence.

MR. STUTES: [prosecutor] He was also convicted of aggravated burglary, first degree robbery, and unauthorized use of a motor vehicle.

THE COURT: What is the Statute?

MR. STUTES: Aggravated burglary is 14:60.

THE COURT: Fourteen sixty (14:60)?

MR. STUTES: Yes. And the penalty is imprisonment at hard labor not less than one (1) nor more than thirty (30) years.

THE COURT: All right. On that, I'll sentence him to five (5) years to run concurrent.

What are the other ones?

MR. STUTES: First degree robbery is 14:64.1. The penalty is imprisonment at hard labor not less than three (3) nor more than forty (40) without benefit of parole, probation, or suspension of sentence.

THE COURT: Five (5) years to run concurrent.

MR. STUTES: And the fourth is the unauthorized use of a motor vehicle. It's Title 14:68.4. It's with or without hard labor, not more than ten (10) years, fined not more than five thousand dollars ($5,000) or both.

THE COURT: *Again*, five (5) years to run concurrent.

(Emphasis added).

According to the applicable statutes, the offenses of aggravated burglary and first degree robbery are to be imposed at hard labor; and as to first degree robbery, without benefit of probation, parole, or suspension of sentence. It appears from the record, that after being correctly advised of the range of punishment for the offenses, including the hard labor provision, the trial court meant for the sentences to be served at hard labor, and, in the case of the sentence imposed on the first degree robbery conviction, to be served without the benefit of parole, probation, or suspension of

sentence. However, the trial court did not specifically say so according to the transcript. The minutes of the sentencing hearing reflects that the sentences were to be served at hard labor and, pertaining to the first degree robbery conviction, without benefits.

In *State v. Matthew*, 07-1326 (La.App. 3 Cir. 5/28/08), 983 So.2d 994, *writ denied,* 08-1664 (La. 4/24/09), 7 So.3d 1193, and *writ denied,* 09-1641 (La. 5/7/10), 34 So.3d 856, this court found that in cases where hard labor is mandatory, but the trial court failed to specify such, the sentence was an illegally lenient sentence. However, the court found that pursuant to La.Code Crim.P. art. 882, the appellate court could amend the sentence to reflect that it was to be served at hard labor. In *State v. Franklin,* 11-216 (La.App. 5 Cir. 12/28/11), 87 So.3d 860, *writ denied*, 12-337 (La. 9/12/12), 98 So.3d 811, wherein the punishment for the offense required hard labor, the court determined that the error was harmless and required no correction.

Thus, we amend Defendant's sentence for aggravated burglary and first degree robbery to reflect they are to be served at hard labor, with the first degree robbery sentence to be served without benefit of probation, parole, or suspension of sentence. The sentence imposed on the conviction of first degree robbery, by virtue of La.R.S. 15:301.1, is deemed to contain the restriction on parole. *See State v. Anderson,* 11-106 (La.App. 3 Cir. 6/1/11), 66 So.3d 568, *writ denied*, 11-1493 (La. 9/23/11), 69 So.3d 1167.

The sentence imposed on the conviction for unauthorized use of a motor vehicle is an indeterminate sentence. The penalty provision for that offense provides for a sentence of not more than ten years, with or without hard labor. The trial court failed to specify whether the sentence was with or without hard labor.

Considering all the circumstances of this case, it is clear that the trial court intended for the unauthorized use of a motor vehicle to be served at hard labor, especially since he ordered the sentence to run concurrently with the other three hard labor sentences. He used the word "*Again*," meaning that the sentence would be the same as the preceding two sentences, which were to run at hard labor concurrently with Defendant's life sentence for aggravated rape at hard labor.

However, we are constrained by the provision of La.Code Crim.P art. 879 which requires the trial court to specify on the record whether the sentence is to be served at hard labor. When there is a conflict between the transcript and the minutes, the transcript prevails. *State v. Guillory*, 00-386 (La.App. 3 Cir. 11/2/00), 773 So.2d 794, *writ denied,* 00-3334 (La. 11/9/01), 801 So.2d 362.

Therefore, Defendant's sentence for unauthorized use of a motor vehicle is hereby vacated, and this case is remanded to the trial court for resentencing and the trial court is instructed to specify whether the sentence is to be served with or without hard labor.

### ASSIGNMENT OF ERROR NUMBER THREE

Defendant argues that his waiver of his right to a jury trial was not knowingly and intelligently made. Alternatively, he requests that the matter be remanded to the trial court for a hearing to determine whether he knowingly and intelligently made the choice to forgo a jury trial. Defendant further argues the trial court erred when it determined that once he waived the jury trial, he could not rescind the waiver.

On January 25, 2011, Defendant filed a Motion and Order to Waive Jury, through his attorney, and requested a bench trial.[5] At the time of Defendant's request,

---

[5] The Motion contains the following language: "It is the position of Defendant herein, that undersigned counsel is entitled to waive his trial by jury pursuant to Article 780 of paragraph B."

trial was scheduled for April 18, 2011. On February 1, 2011, Defendant's motion for bench trial was granted ex parte by the trial court.

On April 4, 2011, Defendant filed a Motion and Order for Jury Trial, asserting "that production of additional evidence indicated that defendant would prefer and is entitled to a trial by Jury." Defendant relied on La.Code Crim.P. art. 780(C) which provides that "[t]he defendant may withdraw a waiver of trial by jury unless the court finds that withdrawal of the waiver would result in interference with the administration of justice, unnecessary delay, unnecessary inconvenience to witnesses, or prejudice to the state." On April 6, 2011, the trial court signed an order *provisionally granting* Defendant's motion, unless it received an objection from the State by April 18, 2011, the trial date. The April 18, 2011 trial date was continued for unknown reasons, and, therefore, no objection was forthcoming by the State. On April 18, 2011, the trial court granted Defendant's motion for a jury trial on the record in open court. The minutes do not reflect whether the State objected to or acquiesced in the trial court's order. Trial was then reset several times for various reasons and ultimately scheduled for December 5, 2011.

On November 30, 2011, the State filed a Motion to Reconsider and Reverse the Order Granting Trial by Jury by Defendant, Rosheed Guillory, and Motion to Proceed with Bench Trial. The State argued:

1.

The defendant, Rosheed Guillory, represented by counsel, knowingly and intelligently waived this right to a trial by jury, more than 45 days prior to the trial date of December 5, 2011, and filed a Motion and Order Waiving Jury Trial so waiving, and obtained an order of this Court so ordering the waiver of trial by jury on February 1, 2011. The Louisiana Constitution, Article 1, Section 17 specifically grants the defendant that right but **MANDATES** that "**the waiver shall be irrevocable**."

2.

Despite the irrevocable nature of his waiver, the defendant, Rosheed Guillory, sought on April 18, 2011, to withdraw his **irrevocable waiver**, and obtained an order of this Court purporting to **revoke his irrevocable waiver**. This order should be reversed and this matter shall proceed to bench trial, as scheduled, on December 5, 2011. The Louisiana Supreme Court has reversed a similar ruling of a trial court allowing a defendant to revoke his irrevocable waiver of a jury trial, and has remanded a similar matter to the trial court where the defendant made his irrevocable waiver - "for a bench trial. . .", **State v. Simmons**, 2011 WL 5120681 (La. 10/11/11), No. 2011-KK-2130.

On the first day of trial, the record reflects that the following conversation took place between Defendant; Thomas Alonzo, counsel for Defendant; Keith Stutes, counsel for the State; and the trial court:

THE COURT: All right. Gentlemen, I've got a motion that was filed last week by the State, asking to reconsider and reverse the order granting the trial by jury and citing his authority for same. I've reviewed it. Have y'all been favored with a copy?

MR. ALONZO: [Defendant's counsel] Yes, Your Honor.

MR. REGISTER: [Co-defendant's counsel] Yes.

THE COURT: Okay. Have you discussed that with your client, the motion that was filed?

MR. ALONZO: Yes, Judge. I have discussed that matter with my client. And my client wants to go with a judge tried case in this matter. So assume that motion is now moot. And I'd like to have my client clarify that for the record, Judge. I think it has to be clarified anyway.

THE COURT: Mr. Rosheed Guillory?

MR. GUILLORY: Yes, sir.

MR. ALONZO: Stand up.

THE COURT: Stand, sir.

You understand that you previously had waived your right to a jury trial?

MR. GUILLORY: Yes, sir.

THE COURT:  And that was -- you rescinded that or you cancelled it, saying you wanted a jury trial. Okay. And today, I understand, you want a trial by judge. Is that correct?

MR. GUILLORY:  (Nods affirmatively)

Yes, sir.

THE COURT:  Now, having said that, the State filed a motion setting out -- the law specifically says that once you waive your right to a jury trial, it is irrevocable. So you're not entitled to a trial by jury anyway at this point, but I understand it's your intention to proceed with a judge trial.

MR. GUILLORY:  Yes, sir.

MR. ALONZO:  Judge, and just for the record, I don't totally agree with the Court's interpretation of the law as it stands. I believe there are exceptions to that rule. If there are changes in circumstances, he would have a right to go back possibly to a jury trial.

That being said, he has instructed me, and that's what he wants to do, and I certainly have to follow the instructions of my client.

MR. STUTES:  Your Honor, my position is that at this point what is before the Court is a motion to reconsider that prior waiver. We take the position that the prior waiver is incorrect because he cannot revoke his waiver.

THE COURT:  That's correct. And that's my ruling.

MR. ALONZO:  All right, Judge, just for the record then, that order that you issued was back in April of 2011.  That was almost six (6) months ago.  Today, I was scheduled to go before a jury trial.  Today -- this Friday, we received that motion, Mr. Stutes filed.  Now, the Judge says we're going with a judge-tried case.  I think this is all moot because that's (what) my client wants now.  But I want to understand just for the record that that was not our original petition.

THE COURT:  Okay.  We'll note that for the record.

All right.

MR. STUTES:  It was a valid waiver early in April of 2011.

THE COURT:  When they waived the jury, it was a valid waver, and it is irrevocable.

20

MR.ALONZO:  Judge, we filed a motion to rescind that – and that was not appealed.  There was no response to that for six (6) months.  That was rescinded.

THE COURT:  But there is a response now, though.

MR. ALONZO:  Yes.  Six (6) months after the fact, after your order.  Thirty (30) days well beyond any appellate (sic) –

THE COURT:  I understand.

MR. STUTES:   What are we doing?  Are we arguing for a jury trial?

THE COURT:   No, I understand.

MR.STUTES:   Well, that settles the issue with Mr. Rosheed Guillory.

The Minutes for December 5, 2011 reflect:  "The defense (Alonzo) withdrew the motion to have a jury trial in this matter.  The defendant advised the court that he wished to waived [sic] the jury and proceed with a bench trial."  The Minutes Report also states:  "The defense (Alonzo) moved to withdraw the motion to sever the co-defendant in this matter, [in] which the defendant concurred."

Defendant argues that the initial waiver of jury trial filed by his attorney on April 4, 2011, was not knowingly and intelligent made in the first place. He asserts that there is nothing in the record to show that he made a knowing and intelligent waiver, initially or on the morning of trial. In comparison, *see State v. Prudhomme*, 12-347 (La. App. 3 Cir. 11/7/12), 101 So.3d 565, wherein the defendant untimely waived his right to a jury.  This court determined that despite the untimeliness of the waiver, the defendant exercised a knowing and intelligent waiver.  The State in *Prudhomme* did not object to the waiver but requested that the waiver be memorialized. The trial court then proceeded to conduct an extensive conversation with the defendant, questioning him in depth as to whether he was initially advised of all the rights to a jury trial, whether he was threatened or pressured, whether he was

21

intimately familiar with the case, and was he absolutely, positively sure that what he wanted was a judge trial.

While discussing whether the defendant made a knowing and intelligent waiver of his right to a jury trial, the fifth circuit in *State v. Singleton*, 05-622, pp. 10-11 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 653, stated:

> LSA-C.Cr.P. art. 780 requires that a defendant be advised of his right to trial by jury; in addition, subsection (A) provides that although the right to trial by jury may be waived in noncapital cases, it must be knowingly and intelligently waived. Waiver of this right is never presumed. *State v. Goodwin,* 05-51 (La.App. 5 Cir. 6/28/05), 908 So.2d 56, 59.

> Although it is the preferred method for the district court to advise the defendant of the right to trial by jury in open court before obtaining a waiver, such practice is not statutorily required. In addition, although preferred, it is not necessary for the defendant to waive the jury trial right personally. Defense counsel may waive the defendant's right to a jury trial on his behalf as long as the defendant's decision to do so was made knowingly and intelligently. *State v. McCloud,* 04-1112 (La.App. 5 Cir. 3/29/05), 901 So.2d 498, 503.

> In the present case, defense counsel, on October 28, 2003, filed a motion to waive trial by jury. In the motion which was signed only by defense counsel, counsel asserted that he consulted with defendant and that defendant fully understood and wished to waive his right to a trial by jury. On the same date that the motion was filed, the trial judge granted the motion allowing defendant to waive his right to trial by jury and to be tried by judge alone. There is no other mention of defendant's jury rights contained in the record. Defendant, in his *pro se* brief, now asserts that he did not actually see or read the motion filed by his attorney which requested a bench trial and, therefore, did not knowingly and intelligently waive his right to a jury trial. He contends that he left the decision to waive his right to a jury trial to his attorney and in retrospect realizes that his attorney misinformed him about the options and benefits of a jury trial. We find merit to this argument.

> In *State v. Zeringue,* 03-697 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, *writ denied*, 03-3523 (La.4/23/04), 870 So.2d 298, this court concluded that a letter from the defense counsel to the judge stating that the defendant chose to waive his right to a jury trial was not sufficient evidence that defendant knowingly and intelligently waived his jury trial right. The court noted that there was nothing to show that defense counsel extensively discussed the right with the defendant or that defendant understood his right and knowingly and intelligently waived it.

Moreover, the court had not accepted the waiver in the defendant's presence.

(Footnotes omitted).

Defendant argues that "[i]n the present case, the record does not show that there was an advisement of right[s] prior to or at the time of the filing of the Motion and Order to Waive Jury Trial on January 31, 2011. This motion did not contain the signature of [Defendant] agreeing to the motion, nor did it express that his counsel had discussed the issue with [Defendant]."

The State argues that the issue of the initial waiver by Defendant's attorney on January 31, 2011 is moot. On the morning of trial, "the defendant in open court personally waived his right to jury trial." The court agrees.

As to the initial waiver, in *State v. Phillips*, 365 So.2d 1304 (La.1978), cert. denied, 442 U.S. 919, 99 S.Ct. 2843 (1979), and *State v. Kahey*, 436 So.2d 475 (La.1983), the supreme court permitted the waiver of a jury trial to be made by defense counsel when defendant was present in court with his attorney when the waiver was made, and the failure of defendant to object at the time was construed to be a waiver by him. In this case, the initial waiver was not done in open court. However, even assuming that the initial January 31, 2011, waiver was not valid, the subsequent statements on the opening day of trial, December 5, 2011, provided the basis for the trial court's determination that Defendant "knowingly and intelligently" waived his right to a jury trial.

The record in this case contains a colloquy between counsel for Defendant, Defendant, counsel for the State, and the trial court that clearly reflects the intention of Defendant to waive his right to a jury trial and have his case tried by the trial court as a bench trial. From the tenor of the discussion, it is clear that Defendant's counsel

was ready to proceed with a jury trial and would have objected to trial proceeding as a bench trial in a consolidated case with co-defendant, Chambers, had Defendant wished to pursue the issue and exercise his right to jury trial. Instead, the record clearly reflects the issue became moot when Defendant instructed his counsel not to oppose the State's motion to rescind the jury waiver and informed the trial court on the record that he wished to proceed with a bench trial.

In a similar case, *State v. Winn*, 39,104, (La.App. 2 Cir. 12/15/04), 890 So.2d 697, *writ denied*, 05-401 (La. 5/13/05), 902 So.2d 1018, the defendant never requested that his waiver of the right to jury trial be withdrawn. In this case, defendant specially requested a bench trial and made no "contemporaneous objection before or during the bench trial" objecting to the bench trial or again requesting a jury trial. *Id.* at 701. Louisiana Code Criminal Procedure Article 841 provides in pertinent part:

> A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

After a discussion with his counsel and the trial court in open court, Defendant chose to waive his right to jury trial and proceed with a bench trial.

In *State v. Pierre*, 02-2665 (La.3/28/03), 842 So.2d 321, the supreme court reversed a panel of this court and re-instated a conviction after finding a voluntary waiver. In that case, this court initially found that a defendant had not "knowingly and intelligently" waived her right to jury trial, based on a lack of evidence in the record of "any expressed, affirmative waiver by the Defendant of her right to a trial by jury." *State v. Pierre*, 02-277, p. 7 (La.App. 3 Cir. 10/02/02), 827 So.2d 619, 623, *rev'd*, 02-2665 (La. 3/28/03), 842 So.2d 321. The third circuit reversed the trial court

24

and set aside the defendant's conviction, remanding to the trial court for a new trial. The supreme court reversed, finding the waiver to be valid.

In *Pierre*, 842 So.2d 321, the trial court never questioned the defendant on the record as to whether she wished to waive her right to jury trial, and totally relied on defendant's counsel for the affirmation of her wish to be tried in a bench trial. At the time defendant's counsel initially informed the court of her waiver of jury trial, the defendant was *not present in the courtroom*. When, on the second day of the bench trial, the defendant's waiver of jury trial was memorialized on the record by her counsel and the trial court, the record reflects there was some ambivalence on the part of the defendant about her initial waiver. The trial court never directly questioned defendant about her wishes or understanding of the waiver of her right to jury trial. In reversing the third circuit panel, and reinstating the conviction and sentence of the defendant, the supreme court stated:

> In the instant case, the record reflects that counsel waived a jury trial on the defendant's behalf. On the second day of trial, the district court memorialized the defendant's earlier waiver in her presence. At this time, defense counsel stated that he and his client had discussed the waiver at length and on several occasions, and that both agreed to the waiver. In these circumstances, the court of appeal erred in its determination that the defendant did not waive her right to jury trial knowingly and intelligently.

*Id*. at 322.

We find Defendant here "knowingly and intelligently" waived his right to a jury trial. In this case, Defendant was present in open court and affirmatively responded to the trial court that he wished to waive his right to a jury trial and submit his case to the trial court for a bench trial. The discussion between the trial court and counsel reflects a clear understanding of the procedural posture of the case. Defense counsel was prepared and intended to proceed with a jury trial had the issue not

25

become moot. However, Defendant clearly instructed his counsel that he wished to proceed with a bench trial. His co-defendant, Chambers likewise waived the jury, and Defendant withdrew his motion to sever his trial from that of Chambers.[6] No objection to the bench trial was lodged by Defendant at any point in the trial court proceedings and the issue is raised for the first time on appeal. Accordingly, Defendant's third assignment of error lacks merit.

## DISPOSITION

For the foregoing reasons, we affirm the convictions of Defendant, Rosheed Guillory, for aggravated rape, a violation of La.R.S. 14:42; aggravated burglary, a violation of La.R.S. 14:60; first degree robbery, a violation of La.R.S. 14:64.1; and unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4. Defendant's sentence for aggravated rape is affirmed. We amend Defendant's sentence for aggravated burglary to be served at hard labor. As amended, we affirm Defendant's sentence for aggravated burglary. We amend Defendant's sentence for first degree robbery to include that it be served at hard labor and without the benefit of probation, parole, or suspension of sentence. As amended, we affirm Defendant's sentence for first degree robbery. Defendant's sentence for unauthorized use of a motor vehicle is vacated and remanded to the trial court for imposition of a determinate sentence.

**CONVICTIONS AFFIRMED. SENTENCE FOR AGGRAVATED RAPE AFFIRMED. SENTENCES FOR AGGRAVATED BURGLARY AND FIRST DEGREE ROBBERY AMENDED. SENTENCES FOR AGGRAVATED BURGLARY AND FIRST DEGREE ROBBERY AFFIRMED AS AMENDED. SENTENCE FOR UNAUTHORIZED USE OF A MOTOR VEHICLE VACATED AND REMANDED FOR RESENTENCING.**

---

[6] Nelson Chambers was also found guilty of all four counts, aggravated rape, aggravated burglary, first degree robbery, and unauthorized use of a motor vehicle. There is no appeal on his behalf presently pending before this court.