527 So.2d 551 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
Robert Louis MAXEY, Defendant-Appellant.
No. CR87-1141.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*552 Joseph D. Toups, Jr., Mansfield, for defendant-appellant.
Don M. Burkett, Dist. Atty., Many, for plaintiff-appellee.
Before DOUCET, YELVERTON and KNOLL, JJ.
DOUCET, Judge.
On March 30, 1987, defendant, Robert Louis Maxey, was indicted by a Sabine Parish grand jury for second degree murder, a violation of La.R.S. 14:30.1. Following trial by jury defendant was found guilty as charged and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal defendant raised four assignments of error. Assignments of error numbers 1, 2, and 3, relative to the *553 sentence imposed, were not briefed and are thereby considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
Defendant and the victim, Anita Gail Pontchieux, lived together in a trailer park with his two daughters from a previous marriage. On the night of January 31, 1987, after drinking and arguing with the victim, defendant went into the bedroom and retrieved a 20 gauge shotgun loaded with a shell containing a 3/4 ounce rifled slug. He returned and placed the muzzle of the weapon against the victim's head and, after being taunted by her to "do it", pulled the trigger, killing her instantly. Afterwards he walked across the street to a neighbor's house and asked them to call the Sheriff's Office.
At trial a deputy coroner testified and established the time and cause of death. Two neighbors of the defendant also testified. Debbie Martinez testified that at 10:30 p.m. on the evening in question, approximately ten minutes after she heard a shot, the defendant knocked on the door of their house, located across the street from defendant's trailer. Defendant entered and said that he was sorry to bother them so late but that he needed someone to telephone the Sheriff's Department. He also stated that he had "killed her." David Martinez, her husband, more or less confirmed his wife's testimony and both stated that the defendant appeared to be "in shock." Mrs. Martinez further testified that the defendant smelled of alcohol.
Detective James McComic was the only law enforcement officer to testify at trial. When he arrived at the scene of the homicide he read defendant his "Miranda rights." He asked defendant where the gun was and he told him. Det. McComic subsequently retrieved a 20 gauge single barrel shotgun with an empty shell casing in the chamber. At the Sheriff's Office Det. McComic again read defendant his rights and obtained defendant's signature on a rights of arrestee form. The officer then proceeded to interview defendant on audio tape. The interview commenced at 12:45 a.m., a little over two hours after the shooting. While conducting the interview Det. McComic noticed that the defendant had been drinking. However, he stated that the defendant was "alert," "agile," and showed no signs of drunkenness either in his walking or in his speech. Det. McComic also stated that he felt the defendant did not realize the seriousness of his actions. At trial the taped statement was played for the jury who read along with copies of the transcribed statement.
In the statement the defendant stated that he and the victim were arguing before the shooting. The argument concerned the couple's infrequent sexual relations and defendant's working long hours six days a week. Apparently the couple was not having sexual relations frequently enough to please the deceased. At some point in the argument defendant made a comment to the effect that perhaps they should end the relationship and the deceased replied, "do something about it." According to the defendant he went into the bedroom intending to go to sleep but instead grabbed the loaded shotgun and went back into the kitchen area where the deceased was sitting at a table. He placed the weapon to her head and, according to the taped statement, she said, "well, go ahead." The defendant then pulled the trigger and shot her in the left side of her head. The defendant stated that when he retrieved the shotgun he had not made up his mind to shoot the deceased; he said he wasn't sure what he was going to do. He stated that the deceased made him mad when she taunted him and showed no fear as he pointed the shotgun at her head. He also stated that he had drunk "about" "3 cans of beer and 2, 3 glases [sic] and I think it was 2 glasses of vodka and 7-up."
Defendant's testimony at trial did not differ much from his taped statement and in fact he confirmed that the tape was "pretty accurate." He reiterated that when he obtained the shotgun he had not intended to shoot the victim. He said he did not feel "rage" until he returned to the kitchen but even then did not intend to "kill" the victim nor intend to pull the trigger to scare her. Later in his testimony *554 he stated that he was "frustrated and a little angry" and by pointing the gun at the deceased he guessed he intended to scare her. He knew the shotgun was loaded and admitted to pulling the trigger with the muzzle of the gun pointed at her head but also stated that he did not remember the instant when the trigger was pulled.
In his assignment of error defendant contends that the evidence presented is insufficient to support a conviction of second-degree murder. Specifically, he argues that the state failed to prove that he possessed the requisite specific intent to kill the deceased or inflict great bodily harm upon her. The applicable standard of review for sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We will not disturb the conviction if after viewing the evidence in the light most favorable to the prosecution we find that any rational trier of fact could have found the essential elements of the offense present beyond a reasonable doubt.
The elements of second-degree murder applicable to the facts of this case are set forth in La.R.S. 14:30.1 as follows:
"A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm."
There is no dispute that the defendant shot and killed the deceased. He admitted this while on the witness stand at his trial and also shortly after the killing to Mr. and Mrs. Martinez and Det. McComic. The issue is whether or not he had specific intent to kill or inflict great bodily harm.
La.R.S. 14:10(1) provides in part:
"Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Specific intent is a state of mind and need not be proven as fact, but may be inferred from the circumstances of the transactions and actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981); State v. Braggs, 487 So.2d 488 (La.App. 3rd Cir. 1986). Specific intent is an ultimate legal conclusion to be resolved by the factfinder. State v. Graham, 420 So.2d 1126 (La.1982).
Defendant points to the evidence showing that he and the victim were involved in an argument immediately prior to his obtaining the shotgun; that he had consumed a quantity of alcohol on the evening in question; and that he was in a noticeable state of shock after the shooting. This evidence he claims, viewed along with his testimony that he did not intend to shoot the victim, shows that he lacked the specific intent to kill or inflict great bodily harm.
There is nothing in the record to indicate that, as required by law, the defendant filed a written notice of his intention to introduce testimony relating to his state of intoxication and bearing upon the issue of whether he had the requisite specific intent. See La.R.S. 14:726; La.R.S. 14:15; State v. Gipson, 427 So.2d 1293 (La.App. 2nd Cir.1983). However, considerable testimony relating to defendant's state of intoxication at the time of the offense was presented at trial without objection from the state and on review we will consider that evidence.
Although defendant had apparently consumed a not insignificant quantity of alcohol on the afternoon, evening, and night of the shooting, the evidence is inconclusive that his state of intoxication was so great that it precluded the formation of specific intent. Defendant never stated at what time he began drinking that day. However, he stated that he got off work at 3:00 p.m., stopped at a store to buy a six pack of beer, and then went home. Mr. Martinez testified that he saw the defendant at the nearby store that afternoon between 3:00 p.m. and 4:00 p.m. It could have been inferred by the jury that the defendant began to drink upon his return homeapproximately 4:00 p.m. It appears that he drank three cans of beer and two or three large mixed drinks of vodka and 7-Up. He apparently began drinking the vodka after returning from a hamburger eatery where he ate dinner with the deceased and his two daughters since he bought the vodka on the way back from *555 the eatery. It can be inferred that he drank the beers before eating dinner. The shooting occurred at or about 10:20 p.m. So from 4:00 p.m. to 10:20 p.m., approximately six hours, the defendant consumed three beers and two or maybe three large mixed drinks. There was no expert testimony presented at trial concerning the effects of consuming this amount of alcohol over this period of time. Although the defendant must have been intoxicated that night, the evidence as a whole does not indicate that he was so intoxicated that it would have been impossible for him to form the requisite specific intent to kill or inflict great bodily harm when he shot the victim in the head at point-blank range with a shotgun.
As to the defendant's assertion that he was observed to be in a state of shock we note that this was after the shooting. By his own testimony defendant went into this "state of shock" after shooting the victim. This has no bearing on his mental state prior to and at the time of the shooting. Discharging a firearm aimed directly at the victim is indicative of intent to kill or inflict great bodily harm. State v. Wilson, 495 So.2d 415 (La.App. 3rd Cir. 1986); State v. Lamb, 458 So.2d 996 (La. App. 3rd Cir.1984). Specific intent can be formed in an instant. Despite defendant's assertions that he didn't intend to kill or shoot the victim when he obtained the shotgun or when he placed the muzzle to her head, the jury could well have inferred from the evidence as a whole that when he pulled the trigger he had the specific intent to kill her or inflict great bodily harm on her.
Counsel for defendant attempted to set forth as a "defense" that defendant committed only manslaughter. La.R.S. 14:31 states in pertinent part:
"Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or ..."
At trial defendant stated that he was frustrated and angry. He pulled the trigger only after the victim repeatedly urged him, tauntingly, to "do it." The argument had heated things up but the crux of defendant's argument appears to be that he went into a rage and became very angry only when the deceased taunted him, immediately before he pulled the trigger. However, considering all of the evidence we find that the jury could have found either that defendant's anger was not sufficient to have deprived an average person of his self control and cool reflection or that his blood had cooled or that an average person's blood would have cooled at the time he pulled the trigger.
After reviewing the record evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of second-degree murder present beyond a reasonable doubt.
For the reasons assigned we affirm the conviction and sentence of the defendant.
AFFIRMED.