# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-1376

**STATE OF LOUISIANA**

**VERSUS**

**TONY GARNELL PENNYWELL**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 312,478
HONORABLE PATRICIA E. KOCH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**

James C. Downs
District Attorney
Monique Y. Metoyer
Assistant District Attorney
Post Office Drawer 1472
Alexandria, Louisiana 71309
(318) 473-6650
Counsel for Appellee:
    State of Louisiana

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana  70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
          **Tony Garnell Pennywell**

**Tony Garnell Pennywell**
**Louisiana State Penitentiary**
**Camp D, Hawk 2/R**
**Angola, Louisiana  70712**
**Defendant/Appellant**

**KEATY, Judge.**

Defendant, Tony Garnell Pennywell, appeals his convictions for two counts of aggravated rape and three counts of aggravated incest. For the following reasons, we affirm the convictions for both counts of aggravated rape and for two counts of aggravated incest. We vacate the conviction and sentence for the remaining count of aggravated incest, render a judgment of guilty of attempted aggravated incest, and remand to the trial court for sentencing thereon. We further instruct the trial court to amend the sentences imposed to reflect that all are to be served at hard labor.

## FACTS AND PROCEDURAL HISTORY

Defendant was charged with three counts of aggravated rape, violations of La.R.S. 14:42, and three counts of aggravated incest, violations of La.R.S. 14:78.1, upon his granddaughter, T.W.[1] Defendant entered pleas of not guilty to all charges. Following trial, the jury returned verdicts of guilty on two counts of aggravated rape. On the third count of aggravated rape, the jury found Defendant guilty of the responsive verdict of sexual battery, a violation of La.R.S. 14:43.1. The jury also found Defendant guilty of all three counts of aggravated incest.

A motion for post-verdict judgment of acquittal or alternative motion for new trial was subsequently filed in open court and was denied. On the same date, Defendant was sentenced to serve life imprisonment without benefit of probation, parole, or suspension of sentence for each count of aggravated rape. Defendant was also sentenced to serve twenty-five years without benefit of probation, parole,

---

[1] The victim's initials are being used in accordance with La.R.S. 46:1844(W).

or suspension of sentence for sexual battery and for each count of aggravated incest. The twenty-five-year sentences were ordered to run consecutively.

Defendant is now before this court asserting one assignment of error. Defendant contends that the evidence was insufficient to support his convictions for aggravated rape and aggravated incest.[2]

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we have discovered one error patent regarding Defendant's sentence.

The crimes of which Defendant was convicted, including aggravated rape, sexual battery, and aggravated incest, all require a hard labor sentence. Although the court minutes indicate the trial court ordered the sentences imposed to be served at hard labor, the sentencing transcript does not so indicate. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the sentences imposed in this case are illegally lenient. *See State v. Loyden*, 04-1558 (La.App. 3 Cir. 4/6/05), 899 So.2d 166. We instruct the trial court to amend Defendant's sentences to reflect that they be served at hard labor. The trial court is also instructed to make a notation in the minutes reflecting the amendment. La.Code Crim.P. art. 882.

## ASSIGNMENT OF ERROR

In his only assignment of error, Defendant contends that the evidence presented at trial was insufficient to find him guilty of aggravated rape and aggravated incest.

---

[2] Defendant does not appeal the conviction for sexual battery.

The standard of review for a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *State v. Mussall*, 523 So.2d 1305 (La.1988). An appellate court does not re-weigh the evidence or assess the credibility of witnesses. *Mussall*, 523 So.2d 1305. Determining the weight of the evidence is a question of fact, reserved for the fact-finder, and we will only infringe on that function to the extent necessary to meet the *Jackson* standard. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27.

*State v. Bethley*, 12-844, p. 2 (La.App. 3 Cir. 2/6/13), 107 So.3d 834, 837, *writ denied*, 13-570 (La. 8/30/13), 120 So.3d 263.

Louisiana Revised Statutes 14:41 defines rape as follows:

A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.

B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.

C. For purposes of this Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:

(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.

(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

The jury convicted Defendant of two counts of aggravated rape. Louisiana Revised Statutes 14:42 defines aggravated rape, in pertinent part:

A. Aggravated rape is a rape committed upon a person . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

. . . .

3

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

The jury also convicted Defendant of three counts of aggravated incest.

Louisiana Revised Statutes 14:78.1 defines aggravated incest, in pertinent part:

A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

B. The following are prohibited acts under this Section:

(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

Investigator Stephen Phillips with the Rapides Parish Sheriff's Office testified that Defendant's date of birth was April 1, 1965, and that he was over eighteen years old at the time the offenses occurred.

Ashley Honor, a forensic interviewer employed at the Rapides Children's Advocacy Center, interviewed T.W. T.W. was shown anatomical drawings and circled body parts thereon. Honor wrote the names of the body parts as described by T.W. Honor testified that T.W. did not appear to have difficulty understanding the questions asked during the interview and was able to explain what had occurred.

Tiffany Smith testified that she was the mother of T.W., whose date of birth is August 5, 2004, and that Defendant was her father and T.W.'s grandfather. Smith testified that she and her children once lived in Alexandria, Louisiana.

4

Defendant moved to Alexandria from North Carolina in late August 2011 and lived at her residence on and off but was residing there between April and June 2012.

Smith indicated that Defendant began watching her kids a week after February 13, 2012. Defendant watched the kids while she was at work from 6:00 a.m. to 2:00 p.m. Smith left for work at approximately 5:30 a.m., and Defendant woke the kids and got them ready for school. Smith testified that the bus picked up T.W. and her sister at approximately 7:20 a.m. and dropped them off at home at 4:20 p.m. Smith testified that T.W. did not miss school on April 16, 2012.[3]

Smith quit working on June 9, 2012, and she and her children subsequently moved to Texas. On July 1, 2012, T.W. began to cry when Smith asked her what was wrong. T.W. then told Smith the Defendant forced her to have sex with him. The following day, Smith reported the event to the sheriff's office in Texas but was told she needed to report the incident in Rapides Parish, Louisiana. She then drove to Rapides Parish and reported the matter to police there. Smith took T.W. to the Children's Advocacy Center and to see a doctor. Smith testified she did not ask T.W. for any details regarding what had happened to her.

Smith testified that "sex" was the word used by T.W. Smith said she had not had any prior conversations with T.W. about sex and never used the word around her. Smith had no idea how T.W. would have known what sex was.

During her courtroom testimony, T.W. gave her date of birth as August 5, 2004, and she said she was eight years old at the time of trial. T.W. made an in-court identification of Defendant.

---

[3] T.W. testified that the offense occurring on this date was interrupted by a car accident in front of her residence.

5

T.W. testified that bad things happened to her more than one time while Defendant, her grandfather, babysat her. T.W. indicated the first incident occurred when she was on the couch watching television. T.W. stated that Defendant was lying on the couch with her and rubbed her private part over her clothing. While rubbing her, Defendant said, "do you want me to stop, do you want me to stop." T.W. testified that she told Defendant to stop, and he did not.

On cross-examination, T.W. was asked if Defendant was asleep when this occurred, and she said he was awake. She was then asked to read the transcript of her interview at the advocacy center and was questioned as follows:

BY MR. HICKMAN:

> Starting with, and I was watching TV, right here. Right here.

Q    Read that for me. Read it out loud so the jury can hear.

A    And I was watching TV, he got on the- -

Q    Couch.

A    On the couch with me and he put his hand right here and started rubbing it and then he woke up.

Q    Okay. What you told Ms. Honor [was] that he was rubbing on you and then he woke up. Is that what you told her? Is that correct? That's what you just read, right?

A    Uh-huh. (Yes)

Q    And that's what we just heard on the tape, that he was rubbing you and then he woke up.

A    (Indicating an affirmative answer)[.]

Q    So at what point did he go to sleep, [T.W.]?

A    I don't know.

Q    You don't know?

6

A      No.

Q      Okay.  But he did wake up though, right?

A      Yes.

Q      Okay.  And he woke up while he was on the couch with you?

A      Yeah.

Q      Okay.  Did he do anything else to you while he was on the couch?

A      No.

Q      Okay.  So while he was sleeping and you say his hand was on your private part, why didn't you just get up?

A      I tried to.

Q      You tried to.  But what happened?  What happened?

A      I don't know.

Q      Okay.  You didn't get up?

A      No.

Q      And he was asleep, right?

A      (Indicating an affirmative answer)[.]

A second incident occurred in Defendant's bed on April 16, 2012.  T.W. testified that Defendant went into her bedroom and told her to go to his room.  At that time, Defendant was just wearing his underwear.  Once she was inside the bedroom, Defendant told T.W. to take off her clothes, and she complied.  Defendant then told T.W. to get on top of him, and she did.  T.W. testified that Defendant then got on top of her, had her put her legs up, and started "humping" her.  T.W. further testified that Defendant's private part was touching her private part.

Defendant next told T.W. to roll over onto her stomach. According to T.W., Defendant then put his "private part on my – in my bottom." When asked if Defendant touched her body with any other part of his body, T.W. testified that Defendant licked her "boobs," her stomach, and her private part. T.W. further testified that Defendant rubbed her private part with his hands and kissed her with open lips. T.W. testified that Defendant stopped what he was doing because he heard a car accident happen outside the home. T.W. indicated that Defendant went outside to see if anyone was hurt, he called 911, and he subsequently returned to tell her to get dressed for school. T.W. testified that she dressed herself and her sister for school that morning, and they made it to school on time.

T.W. testified that another incident occurred in Defendant's bedroom; however, T.W. did not recall what happened. When asked if Defendant put his private part "on" her private part, T.W. agreed. She further agreed that Defendant put his mouth on her private part. T.W. indicated that Defendant stopped what he was doing when her mother came home and was trying to open the door to the residence. T.W. said her mother got her keys mixed up. On re-direct examination, T.W. agreed that she remembered things better at her visit to the advocacy center.

T.W. testified she was living in Texas when she told her mother what had occurred. She said she told her mother that Defendant forced her to have sex with him. T.W. testified she had not had any prior discussion with anyone about sex, and she did not know where she had heard that word. T.W. knew her parents had movies that depicted sex, and one of those movies had been left in the living room or her mother's bedroom.

T.W. identified State's Exhibits 6 and 7 and indicated she circled body parts on the drawings, and Honor wrote on them. State's Exhibit 6 depicts a naked girl

with her vaginal area circled and labeled "private part" and the buttocks circled and labeled "bottom." State's Exhibit 7 depicts a naked adult male with his genital area circled and labeled "private part."

T.W. identified herself on the video of her interview at the advocacy center. During the interview, T.W. said that Defendant had to leave because he forced her to have sex with him, and she spelled out the word sex instead of saying it. When asked what sex was, T.W. said she did not know.

When asked what happened, T.W. discussed telling Defendant she and her sister were hungry. She then said she was watching television when Defendant got on the couch with her and put his hand on her private part and rubbed it. T.W. stated that Defendant asked her if she wanted him to stop. T.W. also stated that Defendant was asleep. She then stated that Defendant told her to go in her mom's room, but she told him she did not want to. Defendant then told her not to tell her mother what had happened. T.W. said this occurred in the evening when her mother was at work.

Upon further questioning, T.W. remembered asking Defendant for eggs, bacon, and toast, and she and her sister were eating. She and Defendant then went into his bedroom where Defendant told her to take her clothes off and had sex with her. T.W. said the act hurt.

T.W. was again asked questions about what occurred when she was sitting on the couch. She stated this occurred in the morning. She was on the couch, and Defendant asked her to retrieve a cover. The two covered up, and Defendant put his hand on her private and asked if she wanted him to stop. T.W. told him, "yes," and Defendant started kissing her on the lips, and his lips were open. Defendant touched her private part with his hand on top of her clothes. T.W. said

9

Defendant's hand remained still, and he was asleep. She said she did not know what made Defendant stop. When Defendant woke up, he went outside to do laundry. Once Defendant came back, it was night, and T.W.'s mother was still at work. T.W. stated that Defendant did it again. When asked what Defendant did again, T.W. stated that he told her to take her clothes off, and they went into his room. T.W. said she lay down on the bed, and Defendant licked her breasts, stomach, and private part. T.W. told Defendant to stop, but he would not. Defendant wore a T-shirt and underwear then took his clothes off and told T.W. to get on top of him. Defendant then started humping on her. T.W. described "humping" as Defendant moving up and down. At that time, Defendant's private part was touching T.W.'s private part. T.W. identified the male genital as a private part. When asked how she knew their private parts were touching, T.W. said she did not know. T.W. said it hurt when Defendant was humping her because Defendant put his private part on hers and then put his private part all the way in her private part. During this incident, Defendant said, "can you feel it baby." Defendant stopped when he heard T.W.'s mother coming through the door. T.W. said nothing came out of her or Defendant's private parts.

T.W. was asked if, during the time she was in the room with Defendant, Defendant's private part touched any other part of her body. T.W. said it touched her bottom. T.W. said Defendant told her to roll over onto her stomach, and Defendant put his whole private part in her bottom, and it hurt. Defendant stopped because he heard a wreck outside. T.W. said it had been raining that morning, and her mother had gone to work earlier that day.

Dr. Brian Elkins testified that he examined T.W. on July 6, 2012. Dr. Elkins found no abnormalities in the vaginal or anal areas, indicating the hymen had

10

smooth edges without evidence of any trauma. Dr. Elkins testified that his findings would not indicate there had never been any sexual contact. Dr. Elkins testified that the anus has a high rate of complete healing and can heal within a few days. Dr. Elkins also testified that a great deal of healing in the vagina can occur within seventy-two hours, and, after one month, the rate of abnormal findings after sexual abuse was quite low. Dr. Elkins further testified that it would not be unusual for there to be no evidence of a sexual offense that occurred earlier in the year. Dr. Elkins agreed that penetration of the vaginal area could occur without destroying the hymen.

Delores Jordan testified that she was involved in an automobile accident on April 16, 2012, in which she hydroplaned and hit a telephone pole. Jordan testified that before she got out of her car, Defendant came to assist her. Defendant then called the police. Jordan testified that Defendant told her he saw her hydroplaning, he knew that whoever was in the car was going to be killed, and he heard the bang when the car hit the pole. Defendant was dressed in a shirt and pants at that time. Jordan testified that Defendant was there immediately, and, by the time she opened her car door, he was there to help her out of the car.

Defendant asserts that T.W.'s testimony was inconsistent, uncorroborated, and did not prove beyond a reasonable doubt that the offenses occurred. Defendant notes that T.W. testified the first incident of inappropriate touching occurred on the couch while she was watching television, and her story changed as to whether he was asleep or awake during that time. Defendant notes that T.W. described an event that happened at night and ended when her mother came home from work; however, Smith testified she worked from 6:00 a.m. to 2:00 p.m. and did not recall working nights.

11

Regarding the incident allegedly interrupted by the car accident, Defendant argues that he could not have been having sex with T.W., witnessed an accident, got dressed, went outside to assist, called the police, and had T.W. get herself and her sister dressed and ready for the bus by 7:20 a.m. Defendant also notes that T.W. told Smith that Defendant forced her to have sex but said she did not know what that word meant. Defendant further notes that Dr. Elkins found no evidence of sexual abuse.

Defendant asserts that the trier of fact erred in finding T.W. to be a credible witness. Defendant argues that the evidence does not justify the verdicts of aggravated rape and aggravated incest; thus, his convictions for those offenses should be reversed.

T.W. testified that prior to the wreck that interrupted Defendant's actions, Defendant's private part touched her private part as he was "humping" her, he licked her private part, and he placed his private part in her bottom. In the advocacy video, T.W. stated that, during this incident, Defendant put his private part in her bottom.

During her testimony, T.W. agreed that prior to being interrupted by her mother's return home from work, Defendant put his private part on her private part and licked her private part. In the advocacy video, T.W. stated that Defendant licked her private part and put his private part in her private part. All of the acts reported by T.W. occurred when she was under thirteen years of age.

The jurors were free to reject or accept, in whole, or in part, the testimony of the victim. *See State v. Richards*, 06-1553 (La.App. 3 Cir. 5/2/07), 956 So.2d 160, *writ denied*, 07-1129 (La. 12/14/07), 970 So.2d 529. Furthermore, the testimony of the victim alone can support a verdict of guilty of a sexual offense even where

12

the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *State v. Guillory*, 12-936 (La.App. 3 Cir. 3/6/13), 129 So.3d 108.

Although there were inconsistencies between T.W.'s trial testimony and her statements at the advocacy center, the jury chose to believe portions of T.W.'s testimony, and this court should not second guess those credibility determinations. *See State v. Davis*, 02-1043 (La. 6/27/03), 848 So.2d 557. The two verdicts of guilty of aggravated rape are supported by T.W.'s testimony that she was seven years old at the time of the offenses and that Defendant performed oral sex on her on two occasions. For the reasons asserted herein, Defendant's two convictions for aggravated rape are affirmed.

Defendant was also convicted of three counts of aggravated incest. The evidence clearly indicates T.W. was seven years old at the time of the offenses, and Defendant was her grandfather. The State charged Defendant with aggravated incest for having sexual intercourse with T.W.

The State was required to prove the allegations set forth in the indictment. In *State v. Daye*, 12-1469 (La.App. 3 Cir. 6/5/13) (unpublished opinion), the defendant was charged with several offenses, including one count of a transaction involving proceeds from drug offenses, a violation of La.R.S. 40:1041. In the first bill of information, the defendant was charged with violating La.R.S. 40:1041. When the state amended the bill of information, it charged the defendant with violating La.R.S. 40:1041(A). On appeal, the defendant asserted the evidence was insufficient to support his conviction, as the state limited its charge to Subsection (A) of La.R.S. 40:1041, as cited in the amended bill of information. The defendant also alleged the state failed to object when the trial court instructed the jury on only

that subsection of the statute. This court discussed the issue in *Daye*, 12-1469, pp.

6-10, as follows:

> In making his argument, Defendant attempts to distinguish this court's opinion in *State v. V.L.G.*, 11-634, 2011 WL 6077831, wherein this court found no merit to an insufficiency of the evidence claim similar to the present Defendant's claim. The defendant in *V.L.G.* argued that the State limited itself to charging the defendant with committing an aggravated rape wherein the victim was prevented from resisting "by threats of great and immediate bodily harm, accompanied by apparent power of execution." La.R.S. 14:42(2). According to the defendant in *V.L.G.*, the State did not conjunctively charge the defendant in accordance with La.Code Crim.P. art. 480. Instead, the State specifically charged that the victim's lack of consent was due to the defendant's force. Additionally, the defendant in *V.L.G.* argued that the jury instructions "included three recitations relating to force or threats of force." *V.L.G.*, WL 6077831, at *3. Claiming the element of force was not proven beyond a reasonable doubt, the defendant in *V.L.G.* asserted that the evidence was insufficient to convict him of aggravated rape.

> Although the court in *V.L.G.* agreed that the evidence was insufficient to prove that the victim was prevented from resisting V.L.G.'s acts by threats of great and immediate bodily harm accompanied by apparent power of execution as alleged in the indictment, this court found that the real issue was notice:

>> We agree there was insufficient evidence to prove D.C. was prevented from resisting the Defendant's acts by threats of great and immediate bodily harm accompanied by apparent power of execution as alleged in the indictment. This court's inquiry should not end here. The actual issue in the case at bar is whether the Defendant was adequately informed of the charges against him.

>> The Defendant did not file a motion for bill of particulars nor did he allege, pre-trial, that the indictment did not provide adequate notice of the charges. The indictment clearly indicated D.C. was under the age of thirteen at the time the offense at issue were [sic] committed, and the Defendant was fully informed of the facts the State intended to show on the charges of aggravated rape. Further, there was no objection to the sufficiency of the indictment at trial.

> *Id.* at p. 7 (citations omitted). Thus, the court found V.L.G.'s insufficiency of the evidence assignment lacked merit.

14

Defendant in the present case argues that *V.L.G.* is distinguishable because the indictment filed against V.L.G. indicated in several places that the victim was under the age of thirteen, another way in which the victim's lack of consent could be proved under La.R.S. 14:42; but, in the present case, Defendant argues that there is nothing in the charging instrument to notify him that another subsection of La.R.S. 40:1041 could be used. Defendant also attempts to distinguish *V.L.G.* because in that case, the trial court instructed the jury on four different ways aggravated rape could be committed, including the victim's age, but, in the present case, the trial court instructed the jury as to subsection A only.

We find these attempts to distinguish *V.L.G.* without merit because the prosecutors in both this case and in *V.L.G.* expanded the charging instrument by making certain statements in both voir dire and arguments to the jury. The prosecutor in *V.L.G.* informed prospective jurors during voir dire that one of the aggravating factors at issue was the fact that the victim was under the age of thirteen. Also, during closing argument, the prosecutor asserted that it had proven that the victim was under the age of thirteen when raped by V.L.G. In the present case, the prosecutor stated the following during voir dire:

> Mr. Daye is also charged with proceeds involving transactions from drug offenses. I have to prove to you beyond a reasonable doubt that charge, that he possessed money. And that that money that he possessed was the proceeds from illegal drug transactions. On that same date this gentleman possessed money and that the money possessed was derived from drug transactions.

Also, during opening and closing argument, the State referred to the money found on Defendant as "drug proceeds" and "proceeds from illegal drug transactions." This language tracks language used in subsection D of La.R.S. 40:1041:

> D. It is unlawful for any person to knowingly or intentionally receive or acquire proceeds derived from any violation of R.S. 40:966 et seq., or to knowingly or intentionally engage in any transaction involving proceeds from any such violations.

Considering Defendant's failure to object to the State's statement in voir dire and argument, this court concludes that Defendant was put on notice that the State was proceeding under subsection D.

The fourth circuit addressed a very similar issue in *State v. Williams*, 02-260 (La.App. 4 Cir. 3/12/03), 842 So.2d 1143, *writ*

*denied*, 03-1991 (La.1/16/04), 864 So.2d 625, *and writ denied*, 06-1583 (La.3/23/07), 951 So.2d 1096, and concluded that the real issue was whether the defendant was notified of the charges against him rather than what was set forth in the charging instrument. In *Williams*, the bill of information charged Williams with second degree kidnapping under subsection B(1) of La.R.S. 14:44.1. Although the evidence was not sufficient to find Williams guilty of B(1), the fourth circuit found that the evidence was sufficient to find Williams guilty of another subsection of the second degree kidnapping statute—B(3). Thus, the court was faced with deciding "whether the defendant's conviction can be upheld based upon subsection B(3) even though the subsection alleged in the bill of information was subsection B(1)." *Id.* at 1147. Finding that Williams' conviction could be upheld, the court noted that Williams' attorney was present at a motion to suppress hearing held five months prior to trial, at which evidence to support subsection B(3) was introduced. The court also noted that it was "apparent that defense counsel had prepared his case based upon the assumption that the defendant had been charged under subsection B(3), not B(1) as alleged in the bill of information." *Id.* at 1148. Williams' defense counsel actually moved for a directed verdict at the conclusion of the case, arguing that he had arrived that morning under the belief that the State was proceeding under B(3) only to realize at some point that the bill of information charged Williams under B(1). Thus, the fourth circuit concluded that "this is not a case where counsel had been misled as to what evidence the State was planning to present and was unprepared to meet the allegations in the bill of information." *Id.*

This court finds that the State's assertions to the jury during voir dire and arguments were sufficient to put Defendant on notice that it was proceeding under a different subsection, namely subsection D. As set forth above, subsection D of La.R.S. 40:1041 provides in pertinent part:

> It is unlawful for any person to knowingly or intentionally receive or acquire proceeds derived from any violation of R.S. 40:966 et seq., or to knowingly or intentionally engage in any transaction involving proceeds from any such violations.

Under this subsection, the State was simply required to prove that Defendant knowingly and intentionally received proceeds derived from a violation of La.R.S. 40:966-971.

In its opening statement and closing arguments in the case at bar, the State noted that Defendant was charged with three counts of aggravated incest. In its closing statement, the State set forth how it proved the elements of aggravated rape.

The State then asserted the following: "The second time he has her to come into his bed where he vaginally, orally and anally rapes her. The third time is when vaginal rape happens again and oral rape. . . ." The State continued:

> No, it's two times that she talks about rape allegations. Within those rape allegations she talks about the multiple ways that's performed on her. So that if you believe her that he orally put his mouth on her, which she said happened twice, you have aggravated rape. If you believe her when she tells you in these two separate occasions that he vaginally penetrated her, you have other counts of aggravated rape. And if you believe her that she was sodomized, that is another count of aggravated rape. . . . You know it's her grandfather, that's a given, so that's not in dispute.

The State never specifically asserted how it proved that Defendant committed aggravated incest. The State asserts that three counts of aggravated incest were proven. The State then asserts that the crime of incest is divided into two categories, crimes involving consanguinity and those involving affinity. The State further asserts: "[Tiffany Smith] testified appellant is her father, and thus the grandfather of T.W. The jury correctly found Appellant guilty."

The case at bar is distinguishable from *Daye* and *V.L.G.* in that voir dire is not a part of the record, and there was no specific reference to what constituted proof of aggravated incest in the State's arguments to the jury. The case at bar is also distinguishable from *Williams* in that there were no pretrial motions filed by defense counsel.

The trial court instructed the jury that it could find Defendant guilty of aggravated incest if he committed a prohibited act, which included:

> Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with a juvenile, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to the juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state; any lewd fondling or touching of the person of

17

either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

There was no objection by defense counsel when this portion of the jury instructions was read.

In *State v. Glynn*, 94-332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, *writ denied*, 95-1153 (La. 10/6/95), 661 So.2d 464, the defendant was charged with aggravated rape, a violation of La.R.S. 14:42(A)(3). The defendant was convicted and, on appeal, argued the trial court erred in charging the jury as to three potential aggravating circumstances when the indictment listed only one aggravating circumstance. The first circuit found:

> The evidence introduced at the trial was sufficient to support an aggravated rape conviction under Subsections 1, 2, or 3. *Ordinarily, the evidence should be limited to the particular theory under which the defendant is being prosecuted*, in this case LSA-R.S. 14:42 A(3). However, any portion of the victim's testimony which would have supported an aggravated rape conviction under subsections 1 or 2 was nevertheless admissible as part of the res gestae. In any event, regardless of the res gestae evidence which might have supported a jury charge under subsections 1 or 2, we find that the trial court erred in charging the jury on subsections 1 and 2. The state specifically limited its theory of the prosecution by listing in the indictment subsection 3 exclusively. Yet, we reject the defendant's assertions that he was prejudiced or denied a fair and impartial trial by the trial court's erroneous inclusion of subsections 1 and 2 in its charge to the jury on aggravated rape. In light of the overwhelming evidence of the defendant's guilt, and considering the fact that the defendant received open file discovery in this case, we find that this erroneous jury charge was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921.

*Glynn*, 653 So.2d at 1309-10 (emphasis added).

Based on the language used in *Glynn*, the jury instructions in the case at bar would not be sufficient to put Defendant on notice that the State would prove he committed aggravated incest by any means other than having sexual intercourse with T.W., as the State limited its theory of proving the offense of aggravated

18

incest by listing only sexual intercourse in the bill of information. Thus, the State was required to prove Defendant committed aggravated incest by having sexual intercourse with T.W.

Defendant had vaginal intercourse with T.W. during the incident interrupted by her mother and had anal intercourse with T.W. during the incident interrupted by the wreck. These acts support the jury's verdicts on two of the three counts of aggravated incest.

There was testimony that Defendant's private part was touching T.W.'s private part when he was "humping" her during the same incident that he had anal sexual intercourse with her, which was interrupted by the wreck. Two charges may arise from the same criminal episode. In *State v. Nichols*, 337 So.2d 1074, 1078 (La.1976), the supreme court stated: "We have consistently rejected the contention that an accused who commits separate and distinct offenses during the same criminal episode or transaction may not be prosecuted and convicted for each offense." Accordingly, Defendant could be prosecuted for anal sexual intercourse and touching T.W.'s private part with his private part.

In *State v. Hawkins*, 06-739 (La.App. 5 Cir. 9/25/07), 968 So.2d 1082, *writ denied*, 07-2272 (La. 4/18/08), 978 So.2d 347, the fifth circuit found the evidence was sufficient to establish penile penetration when the victim described the defendant massaging his penis against her vaginal area, and, when asked if the defendant glided his penis through her vagina, she responded affirmatively. She then agreed that she felt the defendant go "underneath or in [her] vagina in the slightest." *Id.* at 1089.

In *State v. Gaddis*, 07-395 (La.App. 5 Cir. 11/13/07), 973 So.2d 21, *writ denied*, 08-156 (La. 10/10/08), 993 So.2d 1277, the defendant was convicted of

19

two counts of aggravated rape. After finding the defendant had oral sexual intercourse with both victims, the fifth circuit stated:

> While the children were not as explicit in their testimony as to whether or not Gaddis had vaginal or anal intercourse with them, it appears that all of the evidence, including their interviews, their testimony, and Dr. Benton's testimony and notes indicate that Gaddis also committed aggravated rape on both children by anal and/or vaginal sexual intercourse. In particular, although M testified at trial that she was not sure whether the defendant's penis went inside of her "private part," she testified the defendant touched her in her "private part" with his "thing," which would make her stomach hurt. She explained that the defendant made "hard breathing" sounds. In her interview with Ms. Gordon, she explained that the defendant's "wee-wee" touched where she went "potty."
>
> Although K testified she was not certain whether Gaddis' penis went inside her when he made her "rock back and forth" on his exposed "private part" while she was not wearing pants, she answered affirmatively when asked at trial whether it hurt her "butt." K also testified that the defendant made her sit on him from the front and from the back on more than one occasion. She testified she also saw the defendant put M on his lap and rock her back and forth. In fact, during her interview with Ms. Gordon, K detailed a particular occasion in which Gaddis pushed her to the side and told her "let me and [M] get our freak on."

*Id.* at 26-27.

The case at bar is distinguishable from both *Hawkins* and *Gaddis* in that there was no testimony regarding penetration of T.W.'s private part by Defendant's private part during the "humping" incident that occurred during the episode in which Defendant had anal sexual intercourse with T.W. Accordingly, the State failed to prove penetration, however slight, and the evidence was not sufficient to support the jury's verdict for the third count of aggravated incest.

> [U]nder *State v. Byrd*, 385 So.2d 248 (La.1980), and La.Code Crim. Proc. art. 821(E), discharge of the defendant is neither necessary nor proper when the evidence presented at trial does not support the verdict returned but does support a responsive verdict or lesser included grade of the offense. [*State v.*] *Bright*[, 98-398,] at p. 15, [(La. 4/11/00),] 776 So.2d [1134] at 1144; *State v. Hart*, 96-0697, pp. 16-17 (La.3/7/97), 691 So.2d 651, 661-62.

*State v. Higgins*, 03-1980, p. 18 (La. 4/1/05), 898 So.2d 1219, 1232, *cert. denied*, 05-5104 (2005), 546 U.S. 883, 126 S.Ct. 182.

Attempted aggravated incest is a responsive verdict to the charge of aggravated incest. La.Code Crim.P. art. 815. A person is guilty of an attempt to commit an offense when he "does or omits an act for the purpose of and tending directly toward the accomplishing of his object" and he has the specific intent to commit the crime. La.R.S. 14:27(A). "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Jones*, 10-762, p. 6 (La. 9/7/11), 74 So.3d 197, 201. Based on the indictment, the evidence must prove beyond a reasonable doubt that Defendant specifically intended to have sexual intercourse with T.W. *See State v. Marrero*, 11-1285 (La.App. 1 Cir. 2/10/12), 92 So.3d 21, *writ denied*, 12-563 (La. 6/15/12), 90 So.3d 1060.

In *State v. Robinson*, 610 So.2d 1041 (La.App. 3 Cir. 1992), the victim testified that she and her father, the defendant, were alone in the house. The first incident occurred in the bedroom of the home of the defendant's girlfriend. The victim testified that her father asked her to remove her clothing while he did the same. As she lay on the bed, he stood in front of her and put his penis in her "tutu." *Id.* at 1042. The second incident occurred in the living room of the same home. On that occasion, both the victim and her father were completely nude and she was laying on top of him watching television. The defendant denied that the two incidents ever occurred. Because the trial court found statements about

whether penetration occurred inconclusive, it found the defendant guilty of attempted aggravated rape.

On appeal, the defendant argued the evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence, this court stated:

> Although the trial court could not conclusively determine penetration occurred, the young victim stated that on one occasion her father put his penis in her "tutu" and that he put his "wrong place" in her "wrong place". Even though the trial court found that there was not enough evidence for penetration; we feel that defendant's actions constitute an "act in furtherance of" penetration. The defendant's "instantaneous" specific intent is a state of mind and need not be proven as fact but may be inferred from the circumstances and actions of the defendant. *State v. Boyer*, 406 So.2d 143 (La.1981); *State v. Maxey*, *supra* [527 So.2d 551 (La.App. 3 Cir. 1988), *writ denied*, 541 So.2d 868 (La.1989)]. Thus, defendant's contention and that he did not have specific intent must fail. When the evidence is considered in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the defendant had the specific intent and committed an act in furtherance thereof. Therefore, we feel the state proved all of the elements of the crime of attempted aggravated rape beyond a reasonable doubt.

*Id.* at 1045.

Accordingly, we find that the evidence in the present case supports the imposition of a verdict of guilty of attempted aggravated incest, as Defendant's acts of having T.W. take her clothes off and lie on the bed and Defendant then placing his private part on her private part while "humping" her constituted an act in furtherance of penetration.

Defendant's conviction and sentence for the third count of aggravated incest is reversed, and we find Defendant guilty of attempted aggravated incest. This matter is remanded to the trial court for sentencing on the modified judgment of attempted aggravated incest.

**DECREE**

For the reasons provided above, Defendant's two convictions for aggravated rape and two of his convictions for aggravated incest are affirmed. However, the remaining conviction and sentence for aggravated incest is vacated, a judgment of guilty of attempted aggravated incest is entered, and the matter is remanded to the trial court for sentencing on that conviction. We further instruct the trial court to amend the sentences imposed to reflect that all are to be served at hard labor and to make a notation in the minutes to reflect this amendment.

**AFFIRMED IN PART; VACATED IN PART; REMANDED.**